## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES D KIRCUS,** | } | |
| | } | |
| **Petitioner,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:16-cv-08134-RDP** |
| | } | **2:13-cr-00456-RDP-JHE** |
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Respondent.** | } | |

## MEMORANDUM OPINION

This case is before the court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 1). The Government responded to Petitioner's Motion on May 15, 2017. (*Id.*, Doc. # 9). Petitioner amended his Motion on June 23, 2017 (*Id.*, Doc. # 13), and the Government responded on May 16, 2018. (*Id.*, Doc. # 15). The court then sent Petitioner an order with instructions on filing a reply on May 22, 2018. (*Id.*, Doc. # 16), and Petitioner replied on July 18, 2018 (*Id.*, Doc. # 21). The Motion to Vacate is now ripe for decision. After careful review, and for the reasons explained below, the court concludes that Petitioner's Motion to Vacate is due to be denied.

### I.  Factual and Procedural Background

In October 2013, a grand jury issued an indictment charging Petitioner with knowingly possessing a "firearm," defined as a "destructive device, also known as a 'pipe bomb,' which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d)." (Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 8).

W. Scott Brower entered an appearance for Petitioner on November 4, 2013 (*Id*., Doc. # 10), and two days later William J. Brower entered his appearance. (*Id*., Doc. # 12).

After a Scheduling Order was issued (*Id*., Doc. # 13), Petitioner's counsel filed a Motion to Continue the trial in order to retain an explosives expert and to adequately prepare for trial. (*Id*., Doc. # 15). The Motion was conditionally granted on December 13, 2013, pending the filing of a signed Waiver of Speedy Trial (*Id*., Doc. # 17), which Petitioner submitted on December 17, 2013. (*Id*., Doc. # 20). The Motion was granted on December 22, 2013, and the case was continued to the February 2014 trial docket. (*Id*., Doc. # 22). After accepting the Waiver of Speedy Trial, the court then moved the trial date to March 3, 2014. (*Id*., Doc. # 25).

On February 24, 2014, the Government filed a Notice of its intent to offer 404(b) evidence of Petitioner's 2007 conviction for "manufacturing/possession of an unregistered destructive device (pipe bomb)." (*Id*., Doc. # 29). The Government also filed a Motion in Limine requesting the defense be precluded from (1) "argument during opening statement;" (2) "commenting on the possible sentence of consequences that may be imposed on the Defendant if the jury finds him guilty;" (3) "commenting on any failure by the [Government] to call witnesses to testify who have been equally accessible to the defense;" (4) "arguing or presenting testimony to support a 'temporary' or 'transitory,' innocent possession defense" and "presenting a jury instruction on such a defense;" (5) "introducing any video from YouTube or similar websites purporting to show the detonation of an automobile airbag assembly;" (6) and "arguing or presenting testimony to support a 'mistake of law' or a 'mistake of fact' defense" by "arguing that he was unaware of the requirement that a destructive device must be registered under the National Firearms Act." (*Id*., Doc. # 31).

Counsel for Petitioner also filed a Motion in Limine requesting that the Government be precluded from commenting on or testifying about the following: (1) Petitioner's alleged membership in any hate group or white supremacist organization, or any items he displayed at his work station depicting those views; (2) any "document or evidence, which has not been properly authenticated and admitted into evidence;" (3) any "hearsay statements made by any witness to the incident who are not themselves testifying in court;" (4) any "hearsay statements made to any witness by any individual other than the [Petitioner];" (5) any "mention of the [Petitioner's] prior criminal conduct;" (6) any "statements or evidence regarding the [Petitioner's] residence in a Halfway House at the time of his arrest;" (7) and any "statements or evidence that the [Petitioner] is alleged to have made threatening statements toward other individuals." (*Id.*, Doc. # 33).

In conjunction with his Motion in Limine, Petitioner's counsel also filed an objection to the Government's Notice of intent to offer evidence of other criminal conduct. (*Id.*, Doc. # 35). Counsel clarified that previously Petitioner had only been charged with (and plead guilty to) possession of a destructive device in 2007, rather than the manufacture of such device. (*Id.* at 2). Contrary to the Government's assertion that the conviction was relevant to show Petitioner's knowledge and intent, Petitioner's counsel argued that this evidence was not offered for any other purpose other than to show the bad character of Petitioner. (*Id.* at 2-3). Furthermore, because Petitioner had not disputed his knowing possession of the device, his counsel argued that evidence of his prior conviction could have no other purpose but to cause prejudice to the Petitioner. (*Id.* at 3-5). In Petitioner's view, the only relevant question at trial was whether the device was a "destructive device," *i.e.*, whether it was designed as a weapon. (*Id.*).

In its Trial Brief filed on February 26, 2014, the Government responded to Petitioner's Motion in Limine, and argued that evidence related to Petitioner's white supremacist expressions, his residence in a halfway house, and his threats toward other individuals were "inextricably intertwined with the charged crime." (*Id.*, Doc. # 38 at 10). The Government acknowledged that Petitioner's alleged membership in any hate group or white supremacist organization was not relevant to the charge; however, it contended that the defaced license plate displaying swastikas and the words "Fuck America" were "temporally and physically related to the charged offense" due to their "close proximity to the device." (*Id.*). Similarly, it asserted testimony about Petitioner's residence and threats were necessary to construct a cohesive narrative. (*Id.* at 12).

In relation to Petitioner's intent, the Government summarized the "mixed standard" approach adopted by the Seventh Circuit in *United States v. Johnson*, 152 F.3d 618, 628 (7th Cir. 1998). (*Id.* at 13). "The Seventh Circuit reasoned that, generally, the 'objective analysis' will satisfy to determine whether the device falls within the ambit of the National Firearms Act, rendering the defendant's subjective intent regarding the device inappropriate." (*Id.*, citing *Johnson*, 152 F.3d at 627). In other words, "whether the 'objective design of the device or component parts indicates that the object may only be used as a weapon, i.e., for no legitimate social or commercial purpose.'" (*Id.*, quoting *Johnson*, 152 F.3d at 628). If, however, "'the objective design inquiry is not dispositive because the assembled device or unassembled parts may form an object with both a legitimate and illegitimate use, then subjective intent is an appropriate consideration in determining whether the device or parts at issue constitute a destructive device.'" (*Id.* at 13-14, quoting *Johnson*, 152 F.3d at 628). The Government argued that the case fell into the second category under the *Johnson* approach, and subjective intent was

4

"an appropriate factor for the jury to consider when determining what the design and purpose of the device was and whether it had any value other than as a weapon." (*Id*. at 14). The Government further maintained that intent also related to the Rule 404(b) prior conviction in that the evidence tended to show Petitioner's lack of mistake as to the design features of the device. (*Id*. at 15).

The court held a pretrial conference on February 27, 2014 in order to address the pending Motions in Limine. (*Id*., Doc. # 57). It first addressed the Government's Motion and quickly granted requests one through four and request six, and thus precluded the defense from presenting arguments during opening statement, commenting on sentencing or punishment, commenting on the failure to call witnesses equally accessible to both sides, or arguing a temporary or transitory innocent possession defense. (*Id*. at 2). The court also granted the Government's fifth request to prevent the defense from introducing YouTube videos at trial, because the parties agreed that videos pulled "hobnob off the Internet" would not be able to be authenticated. (*Id*. at 2).

As to the question of whether Petitioner's subjective intent was relevant, Petitioner's counsel clarified that they did not intend to argue Petitioner's possession of the device. (*Id*. at 6). The Government then described the case as "a definitional case," and conceded that the evidence could be assessed according to the objective test referenced in the Government's Trial Brief. (*Id*. at 6). Petitioner's counsel then agreed to discuss the propriety of stipulating to possession of the device with Petitioner, as such a stipulation would have the effect of limiting the Government's evidence at trial to only the characterization of the device and whether it qualified as a destructive device under the statute. (*Id*. at 7). In light of these developments, the court ultimately decided that evidence about Petitioner's supposed membership in hate groups, his

Aryan self-identification, the threats he made towards others, and his residence at the halfway house should be excluded at trial. (*See generally* Doc. # 57). The court left open the possibility that some of this information might be elicited at trial if Petitioner decided to testify and a stipulation was not reached. (*Id*. at 8-9). On March 3, 2014, an oral order was entered granting Petitioner's Motion in Limine without prejudice. (*Id*., Docket Entry # 40).

A jury trial was held before the undersigned on March 3-4, 2014. (*Id*., *see generally* Docs. # 54-55). At trial, the Government first called Jay Bagwell, a special agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF). (*Id*., Doc. # 54 at 92-154). Bagwell testified that he received a call from a Birmingham FBI Agent on August 12, 2013, notifying him that Petitioner's co-workers thought they had found bombs in Petitioner's workstation. (*Id*. at 95-96). Bagwell explained the structural components of the device, how Petitioner had modified it, and how he and his team neutralized its explosive capabilities. (*Id*. at 97-130). He also offered his opinion that the end cap of the device, which was held in place with black electrical tape, would fly off at a speed of thousands of feet per second if detonated due to the amount of pressure building up inside the device. (*Id*. at 149-51). The Government then called Lloyd Erwin, a forensic chemist with the ATF in Atlanta, who had inspected the devices found in Petitioner's workstation. He confirmed that the mixture inside the device was sodium azide and iron oxide (*Id*. at 170), which if properly contained, could be classified as an explosive. (*Id*. at 189). Next, an ATF explosives enforcement officer, Walker Conklin, testified that he considered the device to be an "improvised explosive weapon" due to its capability to fragment and injure persons standing nearby. (*Id*., Doc. # 55 at 18-25). Finally, the Government called John Davis, Petitioner's employer at the auto parts store where the devices were found. (*Id*. at 49). When

shown a picture of the modified airbag assembly, he clarified that there was no commercial use related to his business associated with such devices. (*Id*. at 50-51).

After the Government concluded its case, Petitioner's counsel moved for a judgment of acquittal, and argued that while the Government had presented evidence that the device would detonate, it failed to show that the device was designed as a weapon. (*Id*. at 55-56). The court heard the Government's response and denied the motion. (*Id*. at 57). The court explained to Petitioner the consequences of choosing (or not choosing) to testify. (*Id*. at 59-60). Petitioner confirmed that he understood and that it was his decision (not his counsel's) about whether to testify. (*Id*. at 60). He decided not to do so. (*Id*.).

Thereafter, Petitioner's counsel began the Defendant's case in chief and called David Townsend, a firearms and explosives expert. (*Id*. at 66). Townsend stated that he would not classify the device as a weapon, largely because Petitioner attached the end cap to the device using only black electrical tape, instead of welding it on. (*Id*. at 95-97). He opined that this likely would not allow enough pressure to build up inside the device to cause serious fragmentation. (*Id*.). At the conclusion of all the evidence, Petitioner's counsel renewed their judgment of acquittal, insisting that the Government had failed to prove that the device was a weapon. (*Id*. at 115). The court overruled the motion, determining that characterization of the device was a jury question. (*Id*.).

In the final instructions to the jury, the court explained that due to a pre-trial stipulation, the jury need only decide one issue—whether the device qualified as a "destructive device" pursuant to the statutory definition. (*Id*. at 131). The court further instructed that in making this determination, the jury was not to consider Petitioner's intent in creating the device. (*Id*. at 105). After receiving the case and deliberating, the jury found Petitioner guilty of knowingly

possessing a destructive device not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d).

On April 30, 2014, Petitioner moved to appoint substitute counsel. (*Id.*, Doc. # 46). A hearing on that motion was held in front of Magistrate Judge John England on May 9, 2014, and William J. Brower and W. Scott Brower withdrew from representation that same day. (*Id.*, Docs. # 47, 48). The court granted Petitioner's motion on May 13, 2014 (*Id.*, Doc. # 49), and Rick L. Burgess, an Assistant Federal Public Defender, represented Petitioner through sentencing. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 1 at 13). Petitioner was sentenced to a term of 120 months on August 26, 2014. (Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 65). Although the Presentence Report noted that Petitioner was a "career offender" convicted of three total crimes of violence under USSG § 4B1.2(a)(2), Petitioner was sentenced under USSG § 2K2.1 because it produced a higher offense level. (*Id.*, Doc. # 63 at 11).

Allison Case entered an appearance on August 26, 2014 and represented Petitioner on appeal. (*Id.*, Doc. # 62). On September 2, 2014, Petitioner filed a Notice of Appeal, challenging the district court's decision to deny his motion for a judgment of acquittal on the grounds that the Government purportedly failed to present sufficient evidence that the modified airbag cylinder was a "destructive device." (*Id.*, Docs. # 67, 74). The Eleventh Circuit affirmed Petitioner's conviction on August 20, 2015, concluding that the Government's evidence provided a "sufficient basis for concluding the device was designed as a weapon." (*Id.*, Docs. # 74 at 4). The Supreme Court then denied Petitioner's petition for a writ of certiorari on April 18, 2016 (*Id.*, Docs. # 75). Thereafter, Petitioner filed the instant Motion to Vacate on July 25, 2016 (*Id.*, Docs. # 76) and amended his Motion on June 23, 2017. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 13).

## II. Analysis

A federal prisoner may file a motion to vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It is well settled that "to obtain collateral relief[,] a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Here, in his original and amended Motion to Vacate, Petitioner raises fifteen separate grounds for relief. The court divides its analysis between the original and amended grounds, addresses each claim, and after careful review finds that Petitioner's Motion is due to be denied.

### A. Petitioner's Original Motion to Vacate

In his initial Motion to Vacate, Petitioner raised four grounds for relief (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 1): (1) that *Johnson v. United States*, 135 S. Ct. 2551 (2015) invalidated the calculations of the sentencing guidelines used in his case (*Id*. at 4-6); (2) that his trial counsel was ineffective in allegedly advising him to concede to possession of a "pipebomb" (*Id*. at 6-9); (3) that his trial counsel, and perhaps appellate counsel, were ineffective in failing to appeal the trial court's decision to exclude Internet video evidence at trial (*Id*. at 9-11); and (4) that his sentence is invalid under the principles articulated in *United States v. Lockwood*, 789 F.3d 773 (7th Cir. 2015) (*Id*. at 11-13).[1] Below, the court addresses each assertion in turn, and after doing so finds that Petitioner is not entitled to any relief based on the grounds raised in his initial Motion to Vacate.

---

[1] The court interprets Ground Four as an additional ineffective assistance of counsel claim because Petitioner argues that *Lockwood* "was [decided] on June 16, 2015, after [his] appeal was in the Appellate court, and [his] Appeal lawyer would not and refused to amend [his] appeal." (Doc. # 1 at 11-12).

### i. Petitioner's *Johnson*-based Claim is Due to be Denied.

In *Johnson v. United States*, the Supreme Court held that increasing a sentence under the residual clause of the Armed Career Criminal Act (ACCA) violates due process protections. 135 S. Ct. at 2551. The ACCA allows an increased sentence to be imposed where a defendant has three prior convictions for a "violent felony," which the residual clause defines as any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(1), 924(e)(2)(B). The court reasoned that the clause was unconstitutionally vague because it created "uncertainty about how to estimate the risk posed by a crime" and "about how much risk it takes for a crime to qualify as a violent felony." 135 S. Ct. at 2554.

Petitioner's reliance upon *Johnson* here is misplaced. In *Beckles v. United States*, 137 S. Ct. 866 (2017), the Supreme Court clarified that its ruling in *Johnson* had no impact on the advisory Sentencing Guidelines. 137 S. Ct. at 892. The plaintiff in *Beckles* was sentenced as a "'career offender' under United States Sentencing Guideline § 4B1.1(a) because his offense qualified as a 'crime of violence' under § 4B1.2(a)'s residual clause." *Id*. at 888. Significantly, *Johnson* considered a vagueness challenge to the ACCA's residual clause, *i.e.*, a "statute fixing permissible sentences." *Id*. By contrast, the advisory Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range," and thus were not subject to a due process vagueness challenge. *Id*. Because *Johnson* had no impact on the Sentencing Guidelines, Petitioner's claim is due to be denied.

Furthermore, as the Government correctly notes, the *Johnson* and *Beckles* decisions are not even applicable here, because Petitioner was not sentenced under § 4B1.2. (Doc. # 9 at 4). Instead, Petitioner was sentenced under § 2K2.1 because it "produced a higher offense level than

USSG § 4B1.1." (Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 63 at 11). As such, Petitioner's claim under Ground One is without merit.

### ii. Ineffective Assistance of Counsel: Grounds Two through Four are Due to be Denied

Petitioner's next three claims (Grounds Two through Four) assert that his counsel was ineffective. The governing standard for these claims derives from *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two-prong test for adjudicating ineffective assistance of counsel claims; both prongs of the test must be met for a petitioner to succeed. *Id.* at 687. First, a petitioner must show that counsel's performance was deficient, *i.e.*, the performance was outside the range of professionally competent assistance. *Id.* The proper measure of an attorney's performance is "reasonableness under prevailing professional norms." *Id.* at 688. Unless a petitioner can rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he or she cannot show that counsel's performance was constitutionally deficient. *Id.* at 689. "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. [The court asks] only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992); *see also Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (*en banc*) (stating that "perfection is not the standard of effective assistance").

Second, a petitioner must also establish prejudice. That is, he must show there is a reasonable probability that, absent counsel's errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (*en banc*). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because Petitioner must meet both parts

of the *Strickland* test, the court need not address the performance prong if he cannot meet the prejudice prong, and vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

Petitioner argues that his trial counsel was ineffective because counsel allegedly advised Petitioner to concede to possession of a "pipebomb," instead of a modified airbag cylinder, presumably through a pre-trial stipulation. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 1 at 6-8). He asserts that stipulating to possession of the device alleviated the Government of its burden to prove every element of the offense. (*Id*.). He also claims that throughout trial, the Government repeatedly referred to the device as a "pipebomb," which prejudiced the jury against him. (*Id*. at 7-8). Actually, the Government contends just the opposite. That is, it argues that the entire purpose of the trial was to determine whether the device in question was a pipe bomb. (*Id*., Doc. # 9 at 8). The court agrees with the Government and finds that the performance of Petitioner's trial counsel was professionally reasonable.

Contrary to his assertions here, neither Petitioner nor his trial counsel conceded to possession of a "pipe bomb." The transcripts from the pre-trial conference and the transcripts from the trial clearly show that Petitioner merely conceded that he was in possession of a modified airbag cylinder. (*See* Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Docs. # 54-55, 57). Prior to trial, the parties entered into a stipulation confirming that Petitioner did not deny possession of the cylinder, nor that it was "not registered." The court read the stipulation to the jury as part of their instructions before deliberations:

> The parties have informed the Court, though, through stipulation, that in this case the question of possession is not at issue.
>
> Indeed the parties have stipulated the Defendant knowingly possessed the device in question, the features of which were open and obvious at the time alleged in the Indictment.
>
> The parties have further stipulated that the device possessed by the Defendant was not registered to him or anyone else in the National Firearms Registration And Transfer Record.

Therefore, the only question remaining – the only remaining question for you, the jury, to decide is whether the device that the Defendant admits he possessed qualified as a firearm.

(*Id.*, Doc. # 55 at 130-31). Consequently, the Government's burden at trial was to prove exactly the question that Petitioner wrongly asserts his counsel conceded: that the device was a firearm—or, more precisely in the context of this case, a pipe bomb.

As to whether trial counsel's decision to limit the issues at trial was appropriate, counsel's choice "cannot be adjudged incompetent . . . as long as the approach taken 'might be considered sound trial strategy.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*) (quoting *Darden v. Wainwright*, 477 U.S. 168, 186 (1986)). The court affords experienced trial counsel a stronger presumption of reasonably effective performance. *Id.* at 1316. The record indicates a professionally reasonable trial strategy motivated counsel's choice. During the pre-trial conference, the parties discussed the impact of allowing the question of possession to proceed to trial, despite the fact that the device was found at Petitioner's work station. (*See* Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 57). Petitioner's counsel was undoubtedly concerned that testimony as to how the device was found would lead to the introduction of other prejudicial information about Petitioner (*e.g.*, Swastikas carved into his license plate and his supposed membership in a White Supremacist organization). (*Id.* at 3-7). Rather than risk this information reaching the jury, Petitioner's trial counsel reasonably recommended that he stipulate to possession of the device. Because this choice was supported by a reasonable trial strategy, Petitioner cannot show that his trial counsel was deficient. Thus, the court need not reach the question of prejudice, since the performance prong is not met.

In Ground Three, Petitioner claims that his trial counsel (and perhaps his appellate counsel) were ineffective in failing to appeal the court's ruling which excluded certain video

evidence at trial. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 1 at 9-11). Petitioner asserts that the videos, which were randomly pulled from YouTube, showed a "social entertainment purpose behind setting off the airbag devices." (*Id*. at 9). He claims that the denial of admission of these videos caused him prejudice as the jury was not given the opportunity to evaluate whether the device in question had any entertainment value. (*Id*.). In response, the Government notes that the court "is obliged to enforce the Federal Rules of Evidence during a trial;" therefore, Petitioner's counsel was not "constitutionally ineffective for abiding by and not challenging this ruling." (*Id*., Doc. # 9 at 12).

Petitioner's claim fails because he cannot show that he was prejudiced by the absence of the unauthenticated YouTube videos. *Holladay*, 209 F.3d at 1248 (explaining that the court need not address the performance prong if the prejudice prong is not met). The record is clear that in limiting the issues at trial to whether the device bore characteristics that rendered it a "firearm" for purposes of registration, the parties intended the case to be "definitional." For example, to discourage the impulse of the jury to consider the intent of Petitioner in creating the device, the court instructed the jury as follows:

> [T]he key question that you must decide is based upon the objective facts that are put before you as part of the evidence, whether the device in question has the characteristics or features of a destructive device such that Mr. Kircus was required to register it under the National Firearms Act. All right?
>
> Questions about his subjective intent or anyone's possible subjective intent in how they could utilize such a device simply aren't relevant. We're not going to get into subjective intent about what the device could have been used for.
>
> We're wanting to focus on the objective facts and, therefore, you should not speculate as to what the device was intended to do but rather you should consider as part of the evidence whether the device has the specific characteristics or features of a firearm that made it subject to registration under the National Firearms Registration and Transfer Record.

(Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 55 at 105-106). In light of this instruction, whether the device could have been used as a firecracker was not relevant in determining if the device had the specific characteristics of a firearm.

With this in mind, and even assuming for argument only that Petitioner's trial counsel was unreasonable in not appealing the district court's ruling to exclude the unauthenticated YouTube evidence (and, to be clear, they were not), Petitioner is unable to show that he was prejudiced by any such failure. The explosives expert that testified on behalf of Petitioner spoke directly to the device's characterization as a firearm and why he would not classify the device as such: "I wouldn't classify it as a weapon…If this was going to be used as a weapon, I would have taken…instead of taping on the end cap, used some JB Weld or some material like that to put the end cap on so it's held on securely and so it will build up pressure and possibly cause the pipe to explode…As to with it just taped on, it could have been used as fireworks." (*Id*. at 96-97). Within the bounds of the limited trial the court and parties conducted, this was arguably the most persuasive testimony that the device lacked the specific characteristics of a firearm. Because Petitioner cannot show he was prejudiced by the absence of the unauthenticated YouTube videos, his counsel was not constitutionally ineffective.

Finally, in Ground Four Petitioner argues that his sentence is invalid under the analysis in *United States v. Lockwood*, 789 F.3d 773 (7th Cir. 2015), and his appellate counsel was ineffective in refusing to amend his appeal. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 1 at 11-13). Lockwood, the defendant, was similarly convicted of possession of a destructive device. *Lockwood*, 789 F.3d at 779. On appeal, Lockwood attempted to argue that because the device "lacked an immediate power supply, he did not possess a 'destructive device' as that phrase is defined in 26 U.S.C. § 5845(f) and 18 U.S.C. § 921(a)(4)." *Id*. However, the

Seventh Circuit rejected his argument because during trial, he "stipulated that he possessed an explosive bomb and that the explosive bomb he possessed was a destructive device as that phrase is defined in 26 U.S.C. § 5845(f)." *Id*. Thus, the court did not even reach the merits of Lockwood's argument because he "abandoned his ability to challenge the contents of that stipulation later at trial or on appeal." *Id*. at 780.

Petitioner's appellate counsel was not ineffective in failing to raise Lockwood's untested lack of power supply argument. Instead, appellate counsel focused the argument on the question of whether the Government "failed to submit sufficient evidence that Mr. Kircus's modified Airbag cylinder was re-designed as a weapon." (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 1 at 2). As this was the only question considered during Petitioner's trial, this was the strongest challenge to his sentence. Failure to raise the *Lockwood* lack of power supply argument on appeal was neither deficient nor prejudicial to Petitioner.

### B. Petitioner's Amended Motion to Vacate

Petitioner amended his original Motion to Vacate on June 23, 2017 and asserted a scattershot of additional arguments. (*Id*., Doc. # 13). To reiterate, Petitioner raised the following four grounds for relief in his original Motion (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 1): (1) *Johnson v. United States*, 135 S. Ct. 2551 (2015) invalidated the calculations of the sentencing guidelines used in his case (*Id*. at 4-6); (2) his trial counsel was ineffective in allegedly advising him to concede to possession of a "pipebomb" (*Id*. at 6-9); (3) his trial counsel, and perhaps appellate counsel, were ineffective in failing to appeal the trial court's decision to exclude Internet video evidence at trial (*Id*. at 9-11); and (4) his sentence is invalid under the principles articulated in *United States v. Lockwood*, 789 F.3d 773 (7th Cir. 2015) (*Id*.

at 11-13). Petitioner's Amended Motion submits eleven new grounds for rendering his confinement unconstitutional. (*Id.*, Doc. # 13 at 15-32).

- **Ground Six:** improper jurisdiction/venue (*Id.* at 16);

- **Ground Seven:** ineffective assistance of counsel in failing to file a motion to suppress incriminating statements made by Petitioner (*Id.* at 17);

- **Ground Eight:** ineffective assistance of counsel in not advising Petitioner of the complexity of the case (*Id.* at 17-18);

- **Ground Nine:** ineffective assistance of counsel in failing to object to the phrase "pipe bomb" (*Id.* at 18);

- **Ground Ten:** ineffective assistance of counsel in failing to ensure the jury was not exposed to the alleged media coverage surrounding the case (*Id.* at 19);

- **Ground Eleven:** ineffective assistance of counsel in failing to raise the Third Circuit's supposed position that possession of a pipe bomb is not a crime of violence (*Id.* at 19-20);

- **Ground Twelve:** ineffective assistance of counsel in that Petitioner's own expert was unqualified or unprepared to testify (*Id.* at 20);

- **Ground Fourteen[2]:** ineffective assistance of counsel in failing to fully explore the "funzies" defense -- that the device had independent entertainment value -- by calling employee eyewitnesses that had seen Petitioner set similar devices off in the past (*Id.* at 20-21);

- **Ground Fifteen:** ineffective assistance of counsel in failing to thoroughly cross a Government witness that allegedly knew about the "funzies" entertainment value (*Id.* at 21-22);

- **Ground Sixteen:** the district court's improper characterization of Petitioner's "purpose and intent" with respect to the ABS device (*Id.* at 22-23); and

- **Ground Seventeen:** ineffective assistance of sentencing counsel due to the failure to object to the "career offender" enhancement (*Id.* at 23-24).

---

[2] In the Amended Motion, Petitioner omits number 13 from his list of claims.

### i.    Petitioner's Amended Claims Must be Dismissed as Untimely

Petitioner's amendment occurred well outside the relevant one year period, which began on April 18, 2016, the day his petition for certiorari was denied. 28 U.S.C. § 2255(1). Because Petitioner filed his amended Motion outside of this one-year limitations period, the court may consider these additional grounds only if they "relate back" to the claims filed in the initial, timely Motion. Federal Rule of Civil Procedure 15(c). An amendment relates back to the date of the initial pleading "if the claims asserted in the amended pleading arise out of the same conduct, transaction, or occurrence as those giving rise to the claims in the original pleading. *Pruitt v. U.S.*, 274 F.3d 1315, 1318 (11th Cir. 2001). The Eleventh Circuit has interpreted Rule 15(c) in the context of amended petitions for habeas corpus and found that the untimely claim must have more in common with the timely filed claim than simply the fact that they occurred during the same trial or sentencing. *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) "[I]n order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Id.* (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)).

Guided by this precedent, the court concludes that none of Petitioner's new claims in his Amended Motion "arise from the same set of facts as his original claims, but [arise] from separate conduct and occurrences in both time and type." *Id.* at 1346

Grounds Fourteen and Fifteen at least appear to be facially similar to Ground Three in Petitioner's original Petition, which faulted Petitioner's counsel for failing to appeal the court's exclusion of unauthenticated YouTube videos into evidence at trial. (*Id.*, Doc. # 1 at 9-11). Petitioner argued in Ground Three that the exclusion of these videos prevented the jury from fully considering the defense that he designed the device for entertainment purposes only—a

defense he refers to in his Amended Petition as his "funzies" defense. (*Id.*, Doc. # 13 at 20-21). Although the claims in Grounds Fourteen and Fifteen also reference this "funzies" defense, they are raised in the context of two new alleged trial errors not challenged before, and which are different in both time and type from the error alleged in Ground Three of the original Petition. *Davenport*, 217 F.3d at 1346. In his original Petition, the claim raised in Ground Three involved an alleged appeals-related error, but Grounds Fourteen and Fifteen claim distinct trial errors involving the examination of witnesses. The fact that all three claims share a theoretical relationship with the "funzies" defense is simply not enough to bring Petitioner's new claims under the shelter of the relation-back doctrine. Tautologically, Petitioner's new untimely claims that counsel failed to adequately examine various witnesses during trial do not relate back to Petitioner's original claims because they do not satisfy the "both time and type" requirement.

Moreover, none of Petitioner's remaining claims bear any similarity to their predecessors for purposes of relation-back. Grounds Six and Sixteen, dealing with jurisdiction and supposed trial error, clearly do not relate back because they share no underlying facts with the original claims involving sentencing guidelines and ineffective assistance of counsel.[3] As to the other ineffective assistance of counsel claims, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance of counsel claims simply because they violate the same constitutional provision." *United States v. Gonzales*, 592 F.3d 675, 680 (5th Cir. 2009). Thus, new untimely ineffective assistance of counsel claims alleging different trial errors

---

[3] Furthermore, Grounds Six and Sixteen are procedurally barred. Petitioner did not raise these issues on direct appeal and has not shown cause as to why. *Lynn v. United States,* 365 F.3d 1225, 1234 (11th Cir.2004) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presented that claim in a § 2255 proceeding."). There are only two exceptions to the procedural default rule, neither of which applies here. A petitioner must show both cause (that it was deficient for counsel not to raise a claim on direct appeal) and actual prejudice resulting from that error. The causal element is satisfied if Petitioner shows "some objective fact external to the defense prevented [him] or his counsel from raising the claim [] on direct appeal." *Lynn*, 365 F.3d at 1234. Alternatively, a petitioner may show actual innocence. *Id*. Here, Petitioner has not presented any evidence in support of any of these exceptions.

amount to differing occurrences in both time and type and cannot relate back to the original claims. *Davenport*, 217 F.3d at 1346. None of the newly alleged failures of Petitioner's counsel share a common core of fact with Petitioner's original ineffective assistance of counsel claims concerning (1) the advisability of a pre-trial stipulation to possession of the device, (2) counsel's choice to not appeal the district court's ruling to exclude YouTube evidence, and (3) counsel's decision to not appeal Petitioner's sentence based on an untested argument raised in a case from the Seventh Circuit. After carefully reviewing Petitioner's Amended Motion, the court finds that all of Petitioner's additional claims are due to be dismissed as untimely, because they arise out of separate occurrences in both time and type from Petitioner's original claims.

### ii. Petitioner's Amended Claims Also Fail on the Merits

Even if Petitioner's amended claims could be considered timely, none of them raise a material issue on the merits. The court addresses each of these claims below.

Petitioner's Ground Six is without merit because jurisdiction and venue were appropriate in the Northern District of Alabama. There is no dispute that the device was found in the Northern District of Alabama or that Petitioner was prosecuted under 26 U.S.C. §§ 5861(d), a federal statute.

In Ground Seven, Petitioner argues that trial counsel was ineffective in failing to file a motion to suppress Petitioner's statements made to Agent Bagwell regarding his possession of the modified airbag cylinders. (*Id.*, Doc. # 13 at 17). But, as previously discussed, Petitioner's trial was limited to the sole question of whether the device qualified as a destructive device. Possession was not at issue. Therefore, Petitioner cannot show that he was prejudiced by counsel's alleged failure to suppress his statements about an issue that never reached the jury. Counsel was not deficient in choosing to focus Petitioner's defense on only one element of the

charge. Again, this tactical decision (*i.e.*, a strategic choice) was designed to keep the jury from hearing a category of evidence that hurt Petitioner's prospects at trial.

Ground Eight, asserting that counsel was ineffective for failing to advise Petitioner of the complexity of his case and his option to "waive speedy-trial," is also without merit because contrary to his assertion, Petitioner filed a Waiver of Speedy Trial. (Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 20). In fact, the record shows that counsel filed a Motion to Continue Petitioner's trial in order to retain an appropriate explosives expert. (*Id.*, Doc. # 15). It follows, then, that counsel recognized the complexity of Petitioner's case and pursued the appropriate channels to adequately prepare for trial.

Ground Nine faults counsel for allegedly failing to object and move to strike unidentified portions of Agents Bagwell and Conklin's testimony, which Petitioner describes as conflicting and speculative. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 13 at 18). Specifically, he faults counsel for neglecting to object to the characterization of the device as a "pipe bomb." (*Id.*). A thorough review of the record confirms that the phrase "pipe bomb" was repeatedly used by both Defense and Government expert witnesses as a means of comparing the modified airbag cylinder to devices that, in the professional opinion of the experts, unquestionably bore the characteristics of a pipe bomb. (*See* Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Docs. # 54-55). This comparative analysis was necessary for each party to address the key question at trial of whether the device was a destructive device. Consequently, counsel was not deficient in declining to object to such innocuous uses of the phrase. Petitioner simply was not prejudiced when the jury heard "pipe bomb" in this comparative context.

Petitioner also expected counsel to move for a new trial and/or question the jury on its potential exposure to supposed media coverage of his trial. However, the record is devoid of any

facts indicating (1) that there was any media coverage of Petitioner's case while the trial was ongoing or (2) that the jury was exposed to any such media. The court instructed the jury not to consult media sources about the case at the end of the first day of trial (*Id*., Doc. # 54 at 192) and before the jury broke for lunch on the second day of trial (*Id*., Doc. # 55 at 97, 133-34). Petitioner was not prejudiced and counsel was not unreasonable in failing to take further steps to combat some speculative, unrealized threat to the jury's impartiality. Accordingly, the claim is asserted in Ground Ten is without merit

In Ground Eleven, Petitioner argues that his counsel was deficient in not drawing the court's attention to Third Circuit precedent stating that possession of a pipe bomb is not a "crime of violence" under 18 U.S.C. § 16. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 13 at 19-20). Presumably, Petitioner is referring to *U.S. v. Hull*, where the court considered an indictment under 18 U.S.C. § 842(p)(2)(A), a statute "prohibiting the distribution of information relating to explosives with the intent that such information be used for or in furtherance of a federal crime of violence." 456 F.3d 133, 133 (3rd. Cir. 2006). But, *Hull* and related Third Circuit precedent is irrelevant to Petitioner's case because he was indicted under an entirely different statute (26 U.S.C. §§ 5861(d)) for knowingly possessing a "firearm". It is also possible that Petitioner has again misunderstood the guidelines that were used in calculating his sentence. Federal sentencing guideline Section 4B1.2(a)(2) specifically states that a conviction for possession a "firearm" as described in 26 U.S.C. § 5845(a) is a crime of violence. (*See also* Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 63 at 11). However, as discussed previously, Petitioner's guideline calculations were based upon USSG § 2K2.1 because that provision produced a higher range. His prior convictions for aggravated assault and unlawful possession of an unregistered firearm unquestionably constituted crimes of violence for guideline

calculation purposes. (*See Id.*). Because Petitioner was properly sentenced according to these guidelines, counsel was not deficient for failing to raise an irrelevant argument grounded in Third Circuit precedent.

In Ground Twelve, Petitioner claims that his own expert, David Townsend, was not prepared to testify. (Case No. 2:16-cv-08134-RDP ("Habeas Docket"), Doc. # 13 at 20). To the extent that Petitioner is claiming that counsel was deficient in selecting Townsend or in failing to ensure Townsend was prepared to testify, the record indicates just the opposite. After considering evidence of Townsend's education, experience, and background working with explosives, the court recognized him as an expert in firearms, toolmark, and explosives. (Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 55 at 67). Moreover, after examining the evidence in the case, Townsend offered his expert opinion that the modified airbag cylinder was not a destructive device. (*Id.* at 95-97). It was for the jury to weigh his opinion testimony. But, there is absolutely nothing in the record which suggests that Townsend had not sufficiently studied the evidence in forming his opinion. Thus, Petitioner cannot show that he was prejudiced or that counsel acted unreasonably in retaining his services.

Grounds Fourteen and Fifteen relate to counsel's alleged failure to pursue the "funzies" defense through direct and cross-examination. Those claims are also without merit. The decision to cross-examine a witness and the manner in which the examination is conducted are decisions "well within the discretion of a defense attorney." *Fugate v. Head,* 261 F.3d 1206, 1219 (11th Cir. 2001) (*citing Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985)). A petitioner cannot meet the prejudice prong of the *Strickland* test absent a showing of "a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial." *Fugate,* 261 F.3d at 1219. Here, Petitioner has not made the

requisite showing of exculpatory evidence in his Amended Petition. He speculates that testimony from Government witness John Davis relating to the "funzies" defense would have affected the outcome of his trial, but Petitioner ignores the point that his intent was not at issue. Again, his trial was limited to the question of whether the modified airbag cylinder met the definitional requirements of a "destructive device." Therefore, counsel's failure to cross-examine Davis on this point or call other eyewitnesses privy to the "funzies" defense was not unreasonable and did not cause prejudice to the Petitioner.

In Ground Sixteen, Petitioner argues that the court made (unidentified) improper statements about Petitioner's intent with respect to the ABS device. That claim is also off the mark. As already noted, possession of the device, and by extension Petitioner's intent, was not at issue during the trial. Indeed, any reference to Petitioner's intent was made within the context of the court instructing the jury to *not* consider his intent. (Case No. 2:13-cr-00456-RDP-JHE ("Criminal Docket"), Doc. # 55 at 105, 131). Thus, Ground Sixteen is also without merit.

Finally, Ground Seventeen relating to Petitioner's sentencing is due to be dismissed because, contrary to his assertion otherwise, Petitioner's sentence did not include the career offender enhancement under Section 4B1.2(a)(2). As discussed earlier, Petitioner's guideline calculation was based upon USSG § 2K2.1, which actually produced a higher sentence. (*Id.*, Doc. # 63 at 11).

### III. Conclusion

After careful consideration, and for the reasons explained above, Petitioner's Motion to Vacate (*Id.*, Docs. # 1, 13) is due to be denied. A separate Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this December 12, 2018.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE